Farmland Industries, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

58

Submitted on briefs April 30, 1984, to Judges WILLIAMS, JR., DOYLE and BLATT, sitting as a panel of three.

*Matthew J. Creme, Jr., Nikolaus, Hohenadel & Chesters,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, July 17, 1984:

Farmland Industries, Inc. (employer) appeals here an order of the Unemployment Compensation Board of Review (Board) which granted unemployment compensation benefits to Glenda E. Harris (claimant).

The findings of fact, as made by the referee and adopted by the Board, are as follows:

1. Claimant was last employed as a manager by Farmland Industries Inc. from October 6, 1980, at a final rate of pay of $5.02 per hour, and her last day of work was December 19, 1981.

2. In December 1981, employer turned over an amount of cash in excess of $2,000 in marked bills to an undercover State Policeman.

3. A portion of these funds were later uncovered in the coat pocket of a passenger in claimant's automobile.

4. Claimant was arrested for criminal conspiracy and stated that it was a dumb thing to do, "I'm sorry".

5. Claimant was suspended on December 21, 1981, and discharged a week later for allegedly conspiring with others to rob her employer's store.

The employer alleges in his brief that the claimant was involved in a criminal agreement to commit armed robbery at a convenience store which was owned by the employer, albeit not one that was managed by the claimant. He asserts that the State Police, while engaged in an undercover operation, agreed surreptitously with the claimant and others that a trooper would rob the store and then divide the money among the co-conspirators. Subsequently, without the knowledge of the other co-conspirators, the undercover state trooper acquired "marked" bills from the employer and, pretending that the robbery had actually occurred, met with the claimant and others to divide the money allegedly stolen from the employer's store. The employer states that, shortly thereafter the claimant was arrested and charged with criminal

conspiracy, and a search which was conducted at the time of the arrest revealed that an individual who was in the automobile with the claimant at the time of the arrest was in possession of a portion of the ''marked'' money. At the later hearing concerning the claimant's unemployment compensation benefits, however, the employer stated that the troopers involved in the above·undercover operation had refused his request that they testify indicating that the refusal was because of a policy promulgated by the State Police which requires troopers to remain uninvolved in labor disputes.

The burden of proof, of course, is upon the employer to prove that a discharge of an employee was for willful misconduct. *Hadvance v. Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 447, 442 A.2d 862 (1982). And, where the party with the burden of proof did not prevail below, our scope of review is limited to questions of law and a determination of whether or not competent evidence was capriciously disregarded. *Cillo v. Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 445, 442 A.2d 858 (1982).

The employer here contends that the Board erred by failing to remand to the referee so that he could subpoena the undercover state troopers who had refused his request to testify.

We must note, however, that our own careful review of the record fails to disclose any evidence that the employer here made any attempt to acquire a subpoena pursuant to 34 Pa. Code §101.31, which provides that:

> The issuance of subpoenas to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and other records and documents, may be obtained

*on application to the Board, referee, or at any local employment office.* In no case shall a subpoena be issued to require the appearance of a witness before the tribunal unless his residence is within 100 miles of the place fixed for his appearance. (Emphasis added.)

Instead, the employer, citing to our decision in *Unemployment Compensation Board of Review v. Stiles,* 19 Pa. Commonwealth Ct. 38, 340 A.2d 594 (1975), raises the novel legal argument that the referee had the legal duty to subpoena the state troopers *sua sponte.*

In *Stiles,* we held that ". . . the Board and the referees have the power and in fact an absolute duty to subpoena witnesses in order to render a proper final decision under the Act."[1] 19 Pa. Commonwealth Ct. at 44, 340 A.2d at 597. We can not and will not, however, extend our holding in *Stiles* to impose an affirmative duty on the referee to subpoena witnesses absent a timely application by a proper party to the controversy. Adopting the construction of *Stiles* that the employer urges upon us, we believe, would, *inter alia,* clearly overburden the referee in the discharge of his duties.

The employer also contends that the Board erred in failing to conclude that the claimant had engaged in willful misconduct and was consequently ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Special Ex. Sess., P.L. (1937) 2897, *as*

---

[1] Section 506 of the Law, 43 P.S. §826 provides, in pertinent part, that:

> The department and the board shall have power to issue summons or subpoenas to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and other records deemed necessary as evidence in connection with a disputed claim or the administration of this act.

*amended,* 43 P.S. §802(e). Specifically, the employer asks us to modify our present rule of law concerning the treatment of hearsay testimony,[2] which is that unobjected-to hearsay will be given its natural probative effect and can support the Board's findings when it is corroborated by competent evidence. *Bailey v. Unemployment Compensation Board of Review,* 72 Pa. Commonwealth Ct. 293, 457 A.2d 147 (1983). We must decline to do so. To the contrary, our careful review of the record persuades us to agree with the conclusion of the Board and the referee that no competent testimony was presented on behalf of the employer to corroborate his hearsay testimony concerning the claimant's alleged involvement in a ''conspiracy to commit theft'', an ''attempted theft'', or a ''theft'' of her employer.

We have previously defined willful misconduct as a wilful and wanton disregard of the employer's interests, a deliberate violation of rules, a disregard of standards of behavior an employer can rightfully expect from an employee, or negligence manifesting culpability, wrongful intent, evil design or intentional substantial disregard of the employer's interests or the employer's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct.

---

[2] The employer asks us to adopt the following standards:

(1) Hearsay is generally admissible;

(2) Hearsay evidence will be accepted as competent if it falls within the statutory or common law exceptions to hearsay rule or has equivalent circumstantial guarantees of trustworthiness and is more probative on the point for which it is offered than any other evidence which the proponent could reasonably be expected to procure under the circumstances of the case:

(3) The hearsay proponent carries the burden of making a prima facie showing of competence before the evidence can be used to support a finding.

90, 309 A.2d 165 (1973). In our thorough review of the record, however, we can not say that competent evidence existed here to support such a finding.[3]

We will, therefore, affirm the order of the Board.

ORDER

AND Now, this 17th day of July, 1984, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

Judge WILLIAMS, JR. concurs in result only.

---

[3] We note, perhaps gratuitously, that the claimant testified as follows concerning finding of fact number four:

QR: Well why would you say it was a dumb thing to do, and you were sorry, what were you sorry for?

AC: Well I was sorry I had ever met that guy, that's really what I was sorry for.

AEW2: Genda, you just said . . . ok.

QR: You said you were sorry you ever met him?

AC: Well I was sorry that all this ever happened. I didn't . . . you know I was locked up, my kids. . . .?

QR: Why were you sorry for it, if you had no part in it?

AC: Well, because my cousin was with me too, you know. I don't know, I don't remember, really. I mean I don't, when I was locked up, that's not exactly a normal condition your under. I mean, you don't even know what you might say. I've never been locked up in my life. Suddenly I'm locked up and I don't remember every detail and everything, I don't know.